Matthew F. Duggan
Duggan Law, P.L.L.C
23505 E. Appleway Avenue Suite 200-175
Liberty Lake, WA 99019
509-951-2047
matt@mattdugganlaw.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

BAJUN MAVALWALLA,

        Defendant.

Case No.:   2:25-cr-00113-RLP

MOTION FOR RULE 29

Defendant, Bajun Mavalwalla, by and through his attorneys Matthew F. Duggan and Aine Ahmed (pro hac vice), respectfully submits this Motion for Rule 29. The pleading is submitted pursuant to Rule 29(a), Rule 29(c), as well as Rule 33. At the time of drafting this pleading, counsel relied on a rough draft transcript of the Defendant's testimony and notes taken at trial.

## BACKGROUND

On July 9, 2025, the Defendant was charged by indictment with Conspiracy to Impede or Injure Officers, in violation of 18 U.S.C. § 372. There was no reference in the indictment to 18 U.S.C. § 2 ("aiding abetting").[1] The Government

---

[1] While citing the aiding and abetting statute is not mandatory in an indictment, "[A] better practice whenever the basis for the charge of aiding and abetting is anticipated would be to have the indictment framed in the alternative, or at least have a reference to § 2 noted in the charging instrument." *United States v. Duke*, 409 F.2d 669, 671 (4th Cir. 1969), *cited in* U.S. Department of Justice Criminal Manual 2477.

Motion For Rule 29- 1

alleged the following overt act in furtherance of the charged conspiracy: that Defendant Mavalwalla had physically blocked the driveway of a federal facility and/or that he pushed officers, thereby causing federal officers and detainees from leaving the facility. On May 18, 2026, the Defendant's trial began and at the conclusion of the Government's case, on May 22, the Defendant orally motioned the Court for a Rule 29(a) finding based on the insufficiency of evidence. The Court then reserved judgment of the Rule 29 motion.

On May 28, 2026, the jury found the Defendant guilty of aiding and abetting a conspiracy. Based on the jury verdict form, the jury specifically found that the Government had failed to prove beyond a reasonable doubt that Mavalwalla conspired to impede or injure federal officers by use of force, intimidation, or threats. The jury also found that Mavalwalla had not conspired to injure any federal officers or that he had injured any property of the Government. The Defendant now requests a judgment of acquittal from the Court.

### **RULE 29(a) MOTION**

Rule 29(a) requires this court to grant a motion for judgment of acquittal when "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In ruling on a motion for judgment of acquittal under Rule 29(a), this court views the evidence in the light most favorable to the government, deciding whether a rational jury could find the defendant guilty beyond a reasonable doubt. *United States v. Johnson*, 297 F.3d 845, 868 (9th Cir. 2002) (a Rule 29 motion will be granted "only if viewing the evidence in the light most favorable to the government, and granting to the government all reasonable inferences that may be drawn from the evidence, no rational trier of fact could find beyond a reasonable doubt that the defendant committed the crime"); *United States v. Disla*, 805 F.2d 1340, 1348 (9th Cir. 1986) ("A conviction is supported by the evidence if, viewing

Motion For Rule 29- 2

the evidence in the light most favorable to the government and drawing all reasonable inferences, there was relevant evidence from which the jury could reasonably have found the defendant guilty beyond a reasonable doubt."); *United States v. Hazeem*, 679 F.2d 770, 772 (9th Cir. 1982) (in deciding a Rule 29 motion, the "trial court must determine whether, viewing the evidence in the light most favorable to the government, the jury could reasonably find the defendant guilty beyond a reasonable doubt") *cited in United States v. Bitao,* No. CR 06-00004 SOM, 2007 WL 9770624, at *2 (D. Haw. Jan. 12, 2007).  If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.  *United States v. Byrne*, 203 F.3d 671, 675 (9th Cir. 2000).

During the Government's trial presentation, the following undisputed facts were gleaned: 1) the Defendant had not contacted any other protestors prior to joining a protest on June 11, 2025; 2) at no time, had the Defendant damaged any property, nor did he encourage anyone else to do so, and 3) that he had any agreement with anyone to Injure or Impede officers under the federal definition which would require him to use force, threats, or intimidation.  Nor was there any evidence provided, direct or circumstantial, that Mavalwalla "aided and abetted" others to use force, threats, and intimidation by facilitating a conspiracy to impede or injure officers.

The Elbow Strike:

Though he was never charged with assault, as other protestors had been, the Government's contended during its trial presentation that Mavalwalla delivered an elbow strike to an ICE agent even though several videos of the event clearly showed the ICE agent pulling at Mavalwalla's left arm, and that Mavalwalla was simply trying to pull his left arm away (based on the later verdict form, the jury did not buy the Government's contention either).

Motion For Rule 29- 3

He's a Leader:

The Government also argued that Mavalwalla had led the charge to the South Gate, blocking ICE vehicles, none of which carried detainees, from leaving the gated parking lot.[2]  The Government's position was that Mavalwalla was some sort of leader and was ordering others around.  However, the Government's videos show numerous individuals moving to the South Gate almost simultaneously, albeit Mavalwalla was the fastest runner and arrived at the South Gate first.  The Government also submitted evidence that the Defendant had turned his head twice as he ran, and only because of this, that he must have been yelling instructions to others to join him at the South Gate.

The Government offered no direct evidence or any corroborating proof that he yelled any instructions while he ran.  This was simply a theory which did not even rise to the level of circumstantial evidence as the Defendant could have simply moved his head to see if he was being followed.  Contending through witness' interpretation (FBI Agent Burns) that Mavalwalla was barking orders based on head movement was not a reasonable inference.  In fact, the video depicts that over half a dozen people proceeded to the South Gate at the same time as the Defendant, which would negate the nonsensical argument that the Defendant was conspiring with anyone else.

The Threat:

After arriving at the South Gate, according to the Government, Mavalwalla yelled something to the effect of "this is Washington, the police are not going to

---

[2] The purpose of the agents leaving the parking lot in their vehicles was never made clear, varying with each ICE agent.  Some of the agents testified the were leaving to meet with a van provided by the U.S. Marshals but this van, referred to as a "red van" during trial was already blocked by other protesters down the street.  Other ICE agents testified that they were leaving the parking lot to meet with U.S. Marshals.

Motion For Rule 29- 4

help you" at an ICE agent while he stood in front of the South Gate, which the agent half-heartedly described as a threat (perhaps after a pretrial huddle).  The agent's belief that the statement was a threat was never mentioned in any law enforcement report.

The Defendant argued that this statement, which was attributed to the Defendant, was not tendered to the defense during discovery as required under Fed.R.Crim.P 16.  The Government countered that the statement was on the video even though the video does not show the Defendant making the statement.  The Government also stated that the statement was in Agent Burns' FBI report.  It wasn't.[3]  There are many voices screaming at the same time as the statement was made and the Defendant himself did not recall making the statement.  As noted, the statement was not contained in any report.  The Defendant argued that because the Government had violated Rule 16, the statement should be stricken from the record and that the jury be told to disregard the statement.

It is undisputed that in Washington, according to state law, local law enforcement is not permitted to assist ICE in immigration matters ("Keep Washington Working Act").  The defense, during cross-examination, contended that this was not a threat at all and was a matter of state law, and that even if the Defendant had made the statement, it had not impeded the transportation of detainees as the transportation bus and a red van expected to be used for the transportation of detainees had already been rendered immobilized.  Moreover, the ICE agents were not moving any detainees at the time, and the Government had already presented testimony that the "police weren't coming" before the Defendant made the statement and consequently, the Defendant's statement in no way prevented detainees from leaving the facility as he was charged.   Finally, the

---

[3] Agent Burns write two separate reports concerning Mavalwalla, neither of which contained the alleged statement.

Motion For Rule 29- 5

Government failed to provide any evidence that the Defendant intended that statement to be a threat or that a reasonable person would interpret the statement as a serious expression of intent to harm or assault.  In fact, the agent that Mavalwalla apparently made the statement to attacked Mavalwalla from behind, indicating that he in no way feared Mavalwalla.  The jury agreed that the Government's duplicitous characterization of this statement as a threat lacked merit.

The Push:

The Government argued that the Defendant used force against agents when the videos clearly showed the Defendant attempting to remove himself from the grasps of agents.  The Government offered a still shot of the Defendant apparently pushing an agent, but the video from which the photo came clearly showed the same agent pushing the Defendant in the back after the Defendant was pushed into the agent by another agent.  The Defendant simply reacted to the agent pushing him and tried to pull away as the agent grabbed him.[4]

Coordinating Activities:

According to an FBI agent's review of two videos from the event taken at different angles, the FBI agent opined that the Defendant had yelled something to the effect of "block the exits" and "check the bus" while at the South Gate.  Again, these statements were not contained in any FBI report, and it is unclear based on the videos as to who made the statements as numerous people were yelling at the same time.  The video does not clearly show the Defendant making either statement.  Rule 16 requires "the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a

---

[4] Remarkably, the Government attempted to misrepresent the Defendant's actions at the South Gate by providing a still shot of the Defendant appearing to push an ICE agent, of course neglecting to mention that the same ICE agent had just pushed the Defendant in the back- which is apparent on the video.

Motion For Rule 29- 6

government agent if the government intends to use the statement at trial." If you are going to pin an incriminatory statement on the Defendant during trial, you have to give fair notice by providing that statement to the Defendant and the notice should attribute the statement to the Defendant. The Government does not fulfill its obligation by offering in discovery a video of a number of people screaming and attributing one of the screaming voices to the Defendant, especially when the video itself does not show who is making what statements. The Government violated Rule 16 and the Jenks Act by not including it within Agent Burns' report.

As to the particular statement about the bus, the FBI agent testified that because the Defendant's voice was recognized as being the one that said "block the exits" it had to be the same one that said "check the bus" based on his continuous hand movement. The Government offered this to show that the Defendant was coordinating activities at other locations at the ICE building and was, to say the least, flaky. The defense countered that the video showed two distinct voices, one about blocking the exits and the other about the bus. Mavalwalla's counsel played the video several times for the jury to show the voices were dissimilar. There was no evidence to show that the Defendant knew what was happening at the bus, and most importantly, the bus had already been disabled by someone not connected to the protest spray painting the windshield of the bus.

False Theory of the Canister:

The Government offered evidence that the Defendant had kicked a smoke cannister thereby endangering police officers and also tried in vain to show that the Defendant had thrown a cannister even though there was not a scintilla of evidence of such.[5] The only evidence in support of this contention from the Government

---

[5] The Defendant objected to the relevancy of this evidence because the charge involved only federal officers. In fact, the only relevant evidence regarding the Defendant was what happened at the South Gate.

Motion For Rule 29- 7

was that the Defendant had donned heavy gloves prior to the police department launching smoke cannisters, and this must have meant that he had thrown cannisters.   Apparently, if you want truth and justice and a sense of fairness from the Department of Justice, you've come to the wrong place.  Instead, the Government launched false theories throughout trial.  The video of the event clearly showed the Defendant kicking the cannister to the side of the road and that he never threw any cannister, and the Government continued to offer this false theory even after an officer testified that no cannisters had been thrown at officers and that no officer had been injured.

Joining of Arms- It Must be a Conspiracy:

The Government argued that because protestors had joined arms at the South Gate, they entered into a conspiracy to impede officers.  By joining arms with other protesters, which happened instantaneously, no reasonable and rationale juror could have inferred that he engaged in a conspiracy, and the evidence was insufficient to sustain a conviction.  To prove conspiracy, government must prove that agreement existed between two or more persons to violate the law, that the defendant had knowledge of agreement and that the defendant voluntarily participated in a conspiracy.

In order to violate the law as charged, the conspiracy must have included an agreement to use force, threats, or intimidation—the Government failed in all respects to show that joining arms was formulated to use any of these charged perquisites to impeding a federal law enforcement officer.  There was certainly no evidence that joining of the arms threatened or resulted in violence or damaging or harming any ICE agents.  Moreover, there was no evidence that the joining or arms resulted in anyone interpreting such as a serious expression to cause harm or assault.

Motion For Rule 29- 8

The evidence instead indicated that the joining of the arms by the protesters occurred only in response to ICE agents assaulting individuals on a public street by pushing them.  Because protestors were falling to the ground after being pushed by ICE agents, joining of the arms provided protestors with added stability so they would not fall.  The Government argued that the joining of the arms was an effort to provide more force to push against the ICE agents. The several videos taken from the South Gate incident clearly showed that ICE agents initiated physical contact with protestors.

ICE Was Looking for a Fight:

The Court refused to allow the defense to provide any evidence that ICE agents were instructed by both the Criminal Chief at the U.S. Attorney's Office as well as the Spokane Chief of Police to wait a few hours so the situation would dissipate.  This information was provided in discovery and would have gone straight to the state of mind of the agent in charge of ICE, who after receiving these instructions, proceeded outside, while leading other ICE agents, to physically assault protesters.  This was a relevant point to show the jury that the entire physical encounter at the South Gate was initiated by ICE despite contrary instructions.  Counsel explained this very point to the Court, but the objection was erroneously sustained.

## **RULE 29(c) MOTION**

The Defendant hereby incorporates the aforementioned arguments and facts for purposes of this motion for acquittal pursuant to Fed.R.Crim.P 29(c).  Rule 29(c) provides that, after a jury returns a guilty verdict, a "court may set aside the verdict and enter an acquittal."  When considering a motion for judgment of acquittal, courts must determine whether "any rational trier of fact could have

Motion For Rule 29- 9

found the essential elements of the crime beyond a reasonable doubt." *United States v. Hursh*, 217 F.3d. 761, 767 (9th Cir. 2000).

Aiding and Abetting a Non-Existent Conspiracy:

Based on the verdict form, the Defendant was only convicted of a conspiracy based on the aiding and abetting prong which the Court, over the Defendant's objection, tendered to the jury as an instruction.  What is critically missing in the instruction is any clear language indicating that in order to be found guilty of the charge, the Government needed to prove beyond a reasonable doubt that the Defendant knew that a conspiracy existed.  In order to aid and abet a crime, one must have knowledge of the crime.  This should have been the first element.  There was absolutely no evidence that the Defendant knew of a conspiracy which was charged.

In its instruction, the Court stated "To 'aid and abet' means intentionally to help someone else commit a crime."  While accurate, it leaves out the important aspect that the Defendant must know that a conspiracy existed not just knowledge of a crime. The first element of the jury instruction should have been that the Defendant had knowledge that a conspiracy existed and had the specific intent to facilitate the commission of the conspiracy.  There was no evidence presented during the Government's case that the Defendant had knowledge of an ongoing conspiracy or aided and abetted others to formulate a conspiracy.

To aid and abet, a defendant must (1) associate himself with the venture, (2) participate in it as in something that he wishes to bring about, and (3) seek by his action to make it succeed. *United States v. Ramos-Rascon*, 8 F.3d 704, 711 (9th Cir.1993). "Mere participation in a criminal venture is not enough; the government must also show that the defendant intentionally assisted in the venture's illegal purpose." *Id*. To aid and abet someone, you must consciously share the other

Motion For Rule 29- 10

person's knowledge of the underlying criminal act, intended to help that person, and willfully take part in the endeavor, seeking to make it succeed.

The element that the Defendant "acted with the intent to facilitate Conspiracy to Impede or Injure," within the instruction was also ambiguous and confusing and did not specifically state that the defendant had knowledge of the perpetrator's unlawful purpose and specifically intended to help the crime succeed. To convict as a principal of aiding and abetting the commission of a crime, a jury must find beyond a reasonable doubt that the defendant knowingly and intentionally aided and abetted the principal(s) in each essential element of the crime. *United States v. Bancalari*, 110 F.3d 1425, 1429 (9th Cir. 1997). One can intentionally drive a person to a bank which that person intends to rob without having any knowledge that a robbery was going to take place, and under this instruction, could be convicted of committing a crime. Moreover, specific intent should have been included within this instruction as well the overall conspiracy instruction. In fact, Section 2474 of DOJ's Criminal Resource Manual states that the first element of aiding and abetting is "That the accused had specific intent to facilitate the commission of a crime by another." Despite this, the Government erroneously objected to the words "specific intent" be included within the instruction.

The verdict itself makes no sense. The jury obviously believed that the Defendant had not directly conspired with anyone and the evidence indicated that he caused no force, threat, or harm to be used or assisted anyone else to employ such tactics.

<u>Bad Faith</u>:

During cross-examination of the Defendant, the Government asked the Defendant the following:

Motion For Rule 29- 11

Q. And didn't you tell someone on Reddit with respect to moving munitions that **you are returning** that smoking burning garbage that the police are throwing at us?  (Emphasis added).
A. I did not say that.
Q. You didn't say that?
A. I did not say that I returned burning smoking munitions
Q.  You typed and this is your quote in response to talking about smoke canisters being thrown, and calling those smoke canisters fireworks you said quote no returning the smoking burning garbage that the police were throwing at us?  (Page 87, Draft Bajun Mavalwalla Testimony)

The Defendant asked to see the post which the Government never produced. When counsel objected and requested to know the basis of said questions, the Government responded that it was in the Defendant's Reddit posts and Agent Burns report.  The statement is not contained in Agent Burns' reports.    The Government then stated the statement was on his phone.  It was not on his phone.

After reviewing the actual Reddit posts, the following was discerned. During a Reddit conversation, the Defendant was asked by an unknown person, "Molotov cocktails thrown yesterday?" The Defendant responded, "No molotovs were thrown.  **Several people returned** some garbage the police were throwing around (emphasis added).  **A handful of others** were determinedly picking up garbage in and around the protest area (emphasis added). Its almost like the people were trying to participate in peaceful civil disobedience and the police decided to crash the party with fucking firearms."  Someone else then chimed in "Firework" to the conversation to which the Defendant responded, "No returning the smoking garbage that the police were throwing at us."    At no time did the Mavalwalla state that he "launched munitions" or garbage at the police.  *See* Attachment A.

The Government did not ask the questions in good faith, misstated the evidence, knew the Defendant had never said he threw anything at the police, and deliberately mischaracterized the conversation in order to create a false impression

Motion For Rule 29- 12

for the jury.  This false claim hurt the Defendant and is misconduct particularly because the Government knew that the Defendant had concerns about the basis of the statement and still did not correct the record.  *See e.g. United States v. Davenport*, 753 F.2d 1460 (9th Cir. 1985)(Question asked during cross-examination of alibi witness as to whether she had ever told a friend that the defendant had wanted her to help him in a bank robbery was improper as it resulted in putting before the jury an insinuation which was inadmissible propensity evidence).

The government must have a good faith belief in the misconduct of the defendant which was the subject of the question.  "If mistrial is to be avoided, this good faith must be established to the satisfaction of the court, outside the presence of the jury, before the question is asked." *See Zargoza-Almeida v. United States*, 427 F.2d 1148, 1149-50 (9th Cir.1970); *United States v. Davenport*, 753 F.2d 1460, 1463–64 (9th Cir. 1985).

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  In determining whether a prosecutor's comments rendered a trial fundamentally unfair, the statements must be analyzed in the context of the entire proceeding. *Boyde v. California*, 494 U.S. 370, 385 (1990); *Darden v. Wainwright*, 477 U.S. 168, 179 (1986) *see also Hein v. Sullivan,* 601 F.3d 897, 912–913 (9th Cir. 2010) (factors relevant to determining fundamental unfairness are " whether the comment misstated the evidence, whether the judge admonished the jury to disregard the comment, whether the comment was invited by defense counsel in its summation, whether defense counsel had an adequate opportunity to rebut the comment, the prominence of the comment in the context of the entire trial and the weight of the evidence"), cited in

Motion For Rule 29- 13

*Gonzalez v. Foulk*, No. CV 14-6323-DMG (JEM), 2017 WL 4174399, at *23 (C.D. Cal. Mar. 28, 2017).

Under *Darden*, the first question is whether the prosecutor committed misconduct; if so, the next question is whether the misconduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).

When examining witnesses, "a prosecutor commits misconduct when he or she attempts to create an impression on the jury by innuendoes in questions when no supporting evidence exists." *United States v. Sewell*, 359 Fed.Appx. 860, 861 (9th Cir. 2009); see also *Berger v. United States*, 295 U.S. 78, 84 (1935) (prosecutor committed misconduct by "misstating the facts in his cross-examination of witnesses," "suggesting by his questions that statements had been made to him personally out of court, in respect of which no proof was offered," and "assuming prejudicial facts not in evidence").

While district courts have "wide discretion" to admit specific act evidence on cross-examination, that discretion "is accompanied by heavy responsibility on trial courts to protect that practice from any misuse." *Michelson v. United States*, 335 U.S. 469, 480 (1948).

Because the risk of prosecutorial abuse of this rule is substantial, the government "must have a good faith belief in the misconduct of the defendant which was the subject of the question." *United States v. Davenport*, 753 F.2d 1460, (9th Cir.1985)  "If a mistrial is to be avoided, this good faith must be established to the satisfaction of the court, outside the presence of the jury, before the question is asked." *Id.* at 1464.  *Cited in United States v. Zander*, 8 F.3d 33 (9th Cir. 1993).

The Government misrepresented what the Defendant stated and then mispresented to the Court what was actually contained within the Reddit messages. Apparently, the truth was inconsequential.  This line of questioning was unfairly

Motion For Rule 29- 14

prejudicial and a violation of the Defendant's due process rights to a fair trial.  This Court asked the Government to produce the messages to determine if the questions were asked in good faith and the Government never did.

Evidence Submitted to the Grandy Jury Was A Fraud:

The Government did not correctly secure an indictment in this case.  The grand jury transcript was provided to defense counsel on April 29, 2026.  The Grand Jury transcript discloses no evidence of probable cause to indict a conspiracy and, time after time, the testifying agent drew legal conclusions for the grand jury.  For example:

> Q:  And are the facts that you gathered from your investigation, are they consistent with the charges in this indictment, charging conspiracy to impede or injure officers and the two substantive assault charges, one against Ms. Silva and the other against Mr. Hatfield?
> A: Yes.  (GJ Tr. 6).

This is the only time the word "conspiracy" is used during the entire proceeding-and is the agent's legal conclusion.  Mavalwalla is not mentioned until page 24 of the grand jury transcript where it notes that he was present at the South Gate when ICE vehicles were blocked.  The agent then incorrectly testified that some individuals entered the property at the South Gate.  GJ Tr. 25, ln17-19.  Then the agent incorrectly stated that Mavalwalla entered the property. Tr. 25, ln 20-23. This is a complete fabrication and the video shows otherwise.    The agent also testified that Mavalwalla pushed an agent.  GJ Tr. 26, ln 22-25.  It is obvious that the Government used still shots of the incident to misconstrue to the events to the grand jury just as it did to the petit jury by falsely depicting that Mavalwalla grabbed onto an agent, knowing full well that the video showed ICE agents pushing Mavalwalla and that Mavalwalla trying to get away from agents grabbing

Motion For Rule 29- 15

him.  GJ Tr. 29, ln 14-19.  Mavalwalla was never aggressive with the agents and the several videos taken at the South Gate substantiate this.

"The purpose of a Grand Jury is to determine whether there is sufficient evidence to justify a formal accusation against a person. If law enforcement officials were not required to submit to an impartial Grand Jury proof of guilt as to a proposed charge against a person suspected of having committed a crime, they would be free to arrest and bring to trial a suspect no matter how little evidence existed to support the charge."  *United States v. Navarro-Vargas*, 408 F.3d 1184, 1187 (9th Cir. 2005).  There was absolutely no evidence which was submitted to the Grand Jury that Mavalwalla engaged in a conspiracy and the Government therefore lacked the probable cause to indict this case.

### **RULE 33 MOTION**

Again, the Defendant hereby incorporates the previous facts and arguments set forth in this pleading for purposes of this motion.  Federal Rule of Criminal Procedure Rule 33(a) allows a court, on defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires." Unlike a Rule 29 motion, "[t]he district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. A. Lanoy Alston*, D.M.D., P.C., 974 F.2d 1206, 1211 (9th Cir. 1992) (*quoting United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). That said, a motion for a new trial is to be granted "only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimental*, 654 F.2d 538, 545 (9th Cir. 1981). Moreover, a trial court may grant a motion for new trial where, in its judgment, "a serious miscarriage of justice may have occurred." *Alston*, 974 F.2d at 1211-12.

Motion For Rule 29- 16

*Cited in United States v. Castro*, No. 219CR00295GMNNJK, 2023 WL 4052429, at *3 (D. Nev. June 15, 2023).

**CONCLUSION**

The Defendant Mavalwalla did not hurt anyone or damage any property. Without engaging in an alternative reality, there was no evidence submitted by the Government that he engaged in a conspiracy, even if the term was applied loosely. Likewise, there was no evidence that he aided and abetted in a conspiracy particularly because there was no evidence that he knew of any conspiracy.

This prosecution and the ultimate verdict were political. As a matter if public record, the former U.S. Attorney resigned because he believed there was insufficient evidence to indict, and he did not want his ethics to succumb to political pressure. And, before he had even officially left the U.S. Attorney's Office, Main Justice, knowing of his reservations, contacted a specific Assistant United States Attorney and after a conversation, made her interim U.S. Attorney, surpassing her designated supervisors. A deal was struck with this Assistant United States Attorney to indict this case. The smell of unethical conduct permeates the whole case, including its presentation. The very fact that the indictment unusually carries the name of acting Attorney General should give this Court pause. Because of the lack of evidence, and the misrepresentation of evidence as outlined *supra*, a Rule 33 motion should be granted if a Rule 29 motion is denied.

Of additional note, whether this Court now considers it or not, the Government struck the only potential juror of color in the entire panel of over a 100 potential jurors based on the bogus reason that he enjoyed watching "audit" videos of people expressing their First Amendment rights. That potential juror stated unequivocally that he could be fair and impartial and did not support

Motion For Rule 29- 17

protesters breaking the law.  The whole panel system in the Eastern District has been botched for years seemingly to select an inordinate amount of potential jurors from conservative white rural areas rather than the mildly racially disparate areas such as inner city Spokane.

A Rule 33 motion should be granted if a Rule 29 motion is denied.

Dated:  June 19, 2026.


*s/ Matthew F. Duggan*
Matthew F. Duggan
Attorney for Defendant
Duggan Law Offices
23505 E. Appleway Ave
Suite 200-175
Liberty Lake, WA 99019
p. 509-951-2047
f. 509758-0411
e. Matt@mattdugganlaw.com


Mattthew F. Duggan
WSBA No. 21852
Attorney for Defendant
Duggan Law Offices
23505 E. Appleway Ave
Suite 200-175
Liberty Lake, WA 99019
p. 509-951-2047
f. 509758-0411
e. Matt@mattdugganlaw.com

Motion For Rule 29- 18